**In re C.P.P. EXPORT AND IMPORT, INC.**

**Henry W. GREEN, Trustee, Plaintiff/Appellee,**

**v.**

**Clarence CHANG, Defendant/Appellant.**

**Civ. A. No. 90–2098–0.**

United States District Court, D. Kansas.

Sept. 27, 1991.

Kris L. Arnold, Prairie Village, Kan., for appellant.

Henry W. Green, for appellee.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

Defendant appeals a Judgment of Preferential Transfer entered by the United States Bankruptcy Court for the District of Kansas on February 5, 1990 (Case No. 87–20398–7). The bankruptcy court found that the debtor corporation made an avoidable preferential transfer to defendant, and awarded the trustee judgment in the amount of $5000.00. Defendant's general contention in this appeal is that the lower court erred in its determination that the debtor was insolvent at the time of the transfer, and that even if the debtor was insolvent, the transfer was a substantially contemporaneous exchange for new value and, therefore, not avoidable by the trustee under 11 U.S.C. 547(c).

Having reviewed the briefs of counsel, and for the reasons set forth below, the court concludes that the transfer was a substantially contemporaneous exchange for new value, and reverses the judgment of the bankruptcy court.

*Background.*

The debtor in this Chapter 7 liquidation case is C.P.P. Export and Import, Inc., a closely held enterprise based in Overland Park, Kansas, formerly engaged in the import and sale of athletic shoes ("C.P.P."). The founder of C.P.P., Ailo Paul, induced his brother-in-law, Clarence Chang, to invest in the company, and between 1984 and 1986, Chang invested approximately $53,-500 in C.P.P. Chang held forty percent of C.P.P.'s stock, but did not actively participate in the management of the company. C.P.P. experienced financial setbacks, and Chang agreed to loan the company money for operating expenses. In August of 1986, Chang gave Paul ten signed but undated checks for $5000.00 each, with the understanding that Paul could cash the checks when C.P.P. needed the money, but only after Paul had gotten Chang's approval. Paul immediately cashed all ten checks, making the amount of Chang's loan to the company $50,000. Other evidence adduced at the bankruptcy hearing suggested that Chang made additional, unsecured loans to the company.

Complaints began to roll in about serious defects in C.P.P.'s shoes, and the company continued to experience financial reverses. In an attempt to rehabilitate C.P.P.'s dismal financial condition, Paul negotiated with the Taiwanese manufacturer of the shoes, Chu–Tai, for Chu–Tai to acquire from C.P.P. Chang's forty percent interest in the company. On October 15, 1986, Chu–Tai gave C.P.P. a written commitment to purchase Chang's forty percent interest in the company. Paul then approached Chang about selling his interest in C.P.P. On October 25, 1986, Chang agreed to sell his interest and forgive the company's debt to him in exchange for the shoes in C.P.P.'s "paid for" inventory, which amounted to 12,258 pairs. The agreement between Chang and C.P.P. provided that C.P.P. would store the shoes for Chang, and that C.P.P. could sell the shoes on Chang's behalf, retaining 30 percent for expenses and profit. C.P.P. then sold Chang's forty percent interest to Chu–Tai for a contract price of $260,000, plus Chu–Tai's promise to deposit $500,000 in C.P.P.'s bank account in contemplation of a future letter of credit to be issued by the bank in favor of Chu–Tai.

Although C.P.P. had warranted to Chang that the shoes were free from manufacturing defects, this was far from the case. In fact, as many as 90 percent of the shoes transferred to Chang had defects so severe that the shoes could not be sold. C.P.P. eventually sold some of Chang's shoes, but

Chang received only a small portion of the proceeds from these sales. C.P.P.'s financial condition continued to deteriorate, and the company filed for Chapter 7 liquidation on March 23, 1987.

The trustee sought to avoid C.P.P.'s transfer of the shoes to Chang as a preferential transfer under 11 U.S.C. 547(b). Chang argued to the bankruptcy court that by selling the company his forty percent interest, he gave new value to C.P.P. in exchange for the shoes. The bankruptcy court found that an avoidable preference had occurred, and awarded the trustee $5000.00. The court chose this amount because it seemed equitable in light of the large number of defective shoes C.P.P. transferred to Chang. Neither the court's journal entry nor its supplemental opinion addressed Chang's argument that. the exchange was for new value and, therefore, unavoidable by the trustee. This court has considered Chang's argument and, finding it to have merit, reverses the judgment of the bankruptcy court. Because the court finds that the exchange was an unavoidable preference, the court will not address appellant's other arguments raised in this appeal.

*Discussion.*

■ On appeal, Chang contends that C.P.P.'s transfer of the 12,258 pairs of shoes was intended to be, and was in fact, a contemporaneous exchange for new value, the new value consisting of Chang's forty percent interest in C.P.P. The trustee counters that this exchange could not have been contemporaneous because Chang did not know who would ultimately receive his interest in the company, or when the retransfer of his interest would occur. The trustee argues that Chang failed to sustain his contemporaneous exchange defense under section 547(c)(1), which provides:

The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contempora-

neous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. § 547(c)(1) (1988). To establish this defense, Chang must show that the parties intended the transaction to be a contemporaneous exchange for new value, that the exchange was in fact contemporaneous, and that Chang's forty percent interest in the corporation constituted new value for the shares. *See In re Lewellyn & Co., Inc.*, 929 F.2d 424, 427 (8th Cir. 1991). Whether these requirements have been met is a question of fact. *Id.* Factual findings of the bankruptcy court are typically reviewed by an appellate court for clear error, but in this case, where the bankruptcy court did not make any findings with respect to the new value defense, the court will examine the record to determine whether facts are present to support appellant's conclusion that the transfer is unavoidable.

■ With respect to the first element, that the parties intended the transaction to be a contemporaneous exchange for new value, the court finds that this was the intention of the parties. The agreement with C.P.P. provided that Chang and his wife would "trade all their shares of company stocks for all of the inventory which [C.P.P.] has paid for." (Pl.Ex. # 5). According to Chang's testimony, Paul approached Chang about a buy-out of his interest, stating that he was looking for a supplier to come in as a partner, and hinting that he had some other people who might be interested. Paul offered the shoes as consideration for Chang's interest, with the understanding that when this supplier was brought in as a partner, the company could sell the shoes quickly and remit the proceeds to Chang. Chang further testified that when he signed the agreement, this transferred his forty percent interest in C.P.P. back to the company, and that this agreement gave him title to the shoes. Paul testified that on October 15, 1986, he had a written commitment from Chu–Tai to purchase Chang's forty percent interest in C.P.P., and that he then approached Chang,

seeking to repurchase Chang's interest in the company. On October 25, 1986, Paul entered into the agreement with Chang for purchase of Chang's interest, wherein Paul agreed that C.P.P. would convey part of its inventory to Chang in exchange for Chang's interest in the company and forgiveness of debt the company owed Chang. It is clear from the record that the parties intended this transaction be a contemporaneous exchange for new value.

■ The second element of the defense requires that the transaction was, in fact, a substantially contemporaneous exchange. The record supports the conclusion that it was. The exchange was contemporaneous—by the terms of the agreement, C.P.P. received Chang's forty percent interest, and Chang received 12,258 pairs of shoes. These terms, embodied in a single document, signed by both parties, and providing for no delay in the transfer of the shoes or stock by the respective parties, clearly makes the transaction contemporaneous. The fact that Chang did not know when C.P.P. would retransfer his shares does not alter this result.

■ The final element of the new value defense requires that the debtor receive new value. "New value" is defined in section 547(a)(2) to include:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law....

11 U.S.C. § 547(a)(2) (1988). The new value requirement is to be construed liberally, and precise valuation of the property transferred to the debtor is not required unless fraud is alleged. *In re Allen*, 888 F.2d 1299, 1302 (10th Cir.1988) (citing *In re Rodman*, 792 F.2d 125, 128 (10th Cir.1986)). Fraud was not alleged either in this appeal, or in the bankruptcy court, and fraud is therefore not an issue in this case. To find new value, the court need only be of the view that the debtor received property of value in the exchange.

The record in this case compels a conclusion that C.P.P. received new value for the shoes it transferred to Chang. On October 15, 1991, ten days before C.P.P. acquired Chang's shares, C.P.P. had a written commitment from Chu–Tai to purchase Chang's interest in C.P.P. from the company. Paul testified that it would have been impossible for C.P.P. to acquire from Chu–Tai the substantial cash payment and funds for the bank's letter of credit without first purchasing Chang's shares for retransfer to Chu–Tai. Clearly, Chang's shares had value to the company when C.P.P. agreed to purchase them on October 25, 1986. In fact, shortly after acquiring Chang's shares, C.P.P. sold them to Chu–Tai for a contract price of $260,000 cash, plus an additional $500,000 for the letter of credit arrangement. Evidence introduced at trial suggesting that the Chu–Tai deal may have eventually soured does not alter the conclusion that C.P.P. received new value in the exchange with Chang. The court need only be satisfied that the property transferred to the debtor had value at the time of the transfer. *In re Robinson Bros. Drilling, Inc.*, 877 F.2d 32, 33 (10th Cir.1989). The court is aware of the general notion that redemption of stock in an insolvent corporation cannot constitute new value, *e.g., In re Louisiana Industrial Coatings, Inc.*, 31 B.R. 688, 695 (Bankr.E.D.La.1983) (equivalence of value lacking because stock in insolvent corporation was worthless), but the court is satisfied that under the particular facts of this case, C.P.P. received new value in the exchange with Chang.

■ Having concluded that the preference was a substantially contemporaneous exchange for new value, the court must determine if any of the preference is avoidable. Section 547(c)(1) protects transfers only "to the extent" the transfer was a contemporaneous exchange for new value. *Robinson Brothers*, 877 F.2d at 34 (citing *In re Jet Florida Systems, Inc.*, 861 F.2d 1555, 1558–59 (11th Cir.1988)). Therefore, the court must compare the value given to the creditor and the new value received by the debtor in determining the extent to which, if any, the trustee may avoid the preference. *Id.* The purpose of this rule is to ensure that the debtor receives at

least as much in new value as it transfers away. *See id.* at 34. The bankruptcy court did not make a specific finding as to the value of the shoes C.P.P. conveyed to Chang, nor did it make a finding establishing the value of Chang's interest in C.P.P. The record is not sufficiently developed to enable this court to compare the values of the property exchanged as required by *Robinson Brothers.* Therefore, this matter must be remanded to the bankruptcy court for proceedings to determine the respective values of Chang's interest in C.P.P. and the shoes Chang received in exchange for his interest. The bankruptcy court may then determine to what extent, if any, the trustee may avoid the transfer of shoes as a preference in excess of the new value C.P.P. received from Chang, and enter judgment accordingly.

IT IS THEREFORE ORDERED that the judgment of the bankruptcy court is reversed, and the case is remanded to the bankruptcy court for proceedings consistent with this opinion.